IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHNATHAN HOLMAN and
MARCELLA WARNER HOLMAN,

      *Plaintiffs*,

v.

      Case No. 24-CV-1012-EFM

FUTURE GROWTH, LLC and
STUGA, LLC,

      *Defendants*.

**MEMORANDUM AND ORDER**

On February 18, 2025, this Court ordered Defendants to show good cause in writing why the Court should not dismiss this action for lack of subject matter jurisdiction. This matter comes before the Court on Defendants' Response to Order to Show Cause (Doc. 52) filed March 17, 2025. For the reasons stated below, the Court finds that Defendants failed to show good cause why the Court should not dismiss this action.

"Federal courts are courts of limited jurisdiction."[1] Diversity jurisdiction requires complete diversity between the parties and an amount in controversy in excess of $75,000.[2] The amount in controversy is determined by the complaint, if dispositive.[3] In cases of removal based on diversity jurisdiction, courts assess the complaint at the time of removal, and plaintiffs cannot amend the

---

[1] *Brin v. Kansas*, 101 F. Supp. 2d 1343, 1346 (D. Kan. 2000); *see also* U.S. Const. art. III, § 2, cl.1.

[2] 28 U.S.C. § 1332(a)(1).

[3] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

complaint after removal to divest the federal court of diversity jurisdiction.[4] Individual plaintiffs are "the masters of their complaints."[5] "If [a plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove."[6] "In cases where the plaintiff deliberately limits recovery in the complaint to not exceed the jurisdictional amount, the 'defendant seeking removal must prove to a legal certainty that plaintiff can recover the jurisdictional amount.'"[7] Courts must strictly construe the federal removal statute, and any doubts concerning removability must be resolved in favor of remanding the case to state court.[8]

In this case, Plaintiffs brought their original Complaint in state court on December 6, 2023. In Count I, they sought $10,000 for the return of their earnest money; in Count II, $58,409.50 for the breach of contract claim; and in Count III, injunctive relief for the fraudulent transfer claim. This amount totals $68,409.50. On December 20, 2023, Plaintiffs settled Count I with Defendant High Plains Title and received the return of their earnest money. The remaining Defendants removed this action on January 17, 2024. This means that at the time of removal, Plaintiffs sought to recover only $58,409.50, which falls short of the requisite jurisdictional amount. Although the Court need not look any further than the four corners of the Complaint, Plaintiffs further affirmed

---

[4] *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) ("Once jurisdiction has attached, events subsequently defeating it by reducing the amount in controversy are unavailing.").

[5] *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595(2013).

[6] *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

[7] *Freebird, Inc. v. Merit Energy Co.*, 597 F. Supp. 2d 1245, 1248 (D. Kan. 2009) (quoting *Frederico v. Home Depot*, 507 F.3d 188 (3rd Cir. 2007)).

[8] *Asten v. Sw. Bell Tel. Co.*, 914 F. Supp. 430, 432 (D. Kan. 1996) (citations omitted).

their adherence to this inadequate jurisdictional amount in both the Pretrial Order[9] and their Motion for Summary Judgment.[10]

Defendants concede that Plaintiffs pled a monetary figure below the jurisdictional threshold. However, they argue that adding the value of the injunction to the monetary relief pushes them over the minimum amount in controversy. In Count III, Plaintiffs seek injunctive relief under K.S.A. § 33-207, asking the Court to either (1) avoid the real estate transfer that took place on August 28, 2023, between Future Growth and STUGA or (2) prohibit the further transfer of the real estate pending the outcome of this litigation.

"In cases seeking declaratory and injunctive relief, the amount in controversy is measured by the value of the object of the litigation."[11] The Tenth Circuit follows the "either viewpoint rule" which considers "either the value to the plaintiff or the cost to defendant of injunctive and declaratory relief as the measure of the amount in controversy for purposes of meeting the jurisdictional minimum."[12] As such, the Court will consider both parties' viewpoints in determining whether the jurisdictional threshold is met.

From Plaintiffs' viewpoint, Defendants argue that the value of the injunction is worth the price of the lease term, which would satisfy the amount in controversy. The Court agrees that it should consider the value of the lost lease term in calculating Plaintiffs' damages. This is because Defendants would have presumably continued leasing the pasture to Plaintiffs through the end of

---

[9] *See* Doc. 41, p. 10 ("Plaintiffs request damages for breach of a verbal agricultural lease and wrongful exclusion in the amount of $58,409.50.").

[10] *See* Doc. 45 ("The original amount pleaded by the Holmans was $58,409.50 . . . . Notwithstanding the higher damages, the Holmans will adhere to the lower damages amount pleaded and stated in the Pretrial Order.").

[11] *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006) (citations and quotations omitted).

[12] *Id.*

2023 had they been prevented from transferring the land. But the Court does not agree that considering this factor pushes Defendants over the jurisdictional minimum. Plaintiffs allege that Future Growth agreed to accept $6,500 for pasture rent in 2023. Thus, adding this amount to Plaintiffs' claimed breach of contract damages of $58,409.50 brings the total to $64,909.50—an amount still below the jurisdictional threshold. As such, the Court turns to Defendants' viewpoint to determine whether the amount in controversy requirement is met.

Defendants argue that their inability to sell the property and their continued cost of operating the farm would push them over the jurisdictional threshold. However, under both of Plaintiff's injunctive relief theories, Defendants cannot meet the amount in controversy.

Under Plaintiff's first theory—avoiding the transaction from Future Growth to STUGA—Defendants cannot meet the jurisdictional minimum. Both parties agree that on August 28, 2023, Future Growth sold the real estate to STUGA for $1. Thus, avoiding the transaction would only cost Defendants $1, bringing the total to $64,910.50. This amount is still well beneath the jurisdictional threshold.

Under Plaintiff's second theory—prohibiting the further transfer of the real estate—Defendants still cannot meet the jurisdictional minimum. Defendants claim that prohibiting the further transfer of their property will subject them to $30,000 worth of "taxes, utilities, and basic essentials" and will prevent them from profiting hundreds of thousands of dollars from a sale. But "[e]vidence establishing the amount [in controversy] is required by §1446(c)(2)(B) . . . when . . . the court questions[] the defendant's allegation."[13] This evidence "cannot be based on contingent, speculative, or collateral claims that could possibly occur as a result of the judgment."[14]

---

[13] *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

[14] *Phelps Oil & Gas, LLC v. Noble Energy Inc.*, 5 F.4th 1122, 1127 (10th Cir. 2021).

As to Defendants' $30,000 claim, Defendants provide no evidence detailing the cost of "taxes, utilities, and basic essentials." This leaves the Court without any basis to assess how Defendants reached their $30,000 figure. Without this evidence, the Court cannot consider this claim in the amount in controversy calculation.

Additionally, Defendants fail to present evidence that an injunction prohibiting the further transfer of the real estate would cost them hundreds of thousands of dollars from a lost sale. Although Defendants provide evidence of a prospective buyer, the sale fell through when the buyer received *lis pendens* notice and was consequently unable to obtain title insurance. The key issue is whether the injunction itself—not just notice of the lawsuit—caused the sale to collapse. Here, the evidence shows that the buyer backed out due to the title insurance issue, an independent factor that would have existed regardless of the injunction. Because Defendants cannot show that the buyer would have proceeded but for the injunction, the alleged lost profits cannot be included in the amount in controversy.

Lastly, Defendants cannot rely on speculation about a future sale to meet the jurisdictional threshold. A claim that the injunction might impact an unidentified buyer at an unknown price is too uncertain to factor into the amount in controversy. Therefore, without evidence directly linking the injunction to a concrete financial loss, Defendants' claim remains insufficient.

In sum, Plaintiffs, as the masters of their Complaint, stipulated to an amount below the federal jurisdictional requirement before removal. Defendants failed to prove that either the injunction's value to Plaintiffs or the cost to Defendants pushed the amount over the jurisdictional threshold. Consequently, the case does not meet the amount in controversy requirement of 28 U.S.C. § 1332(a)(1). Therefore, the Court is devoid of federal jurisdiction, and the case must be remanded to state court. As such, the remaining motions in this case are moot.

-6-

**IT IS THEREFORE ORDERED** that this case is dismissed for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that this case be remanded to the District Court of Ford County, Kansas for all further proceedings pursuant to 28 U.S.C. § 1447(c).

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 42) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 46) is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

This case is closed.

Dated this 3rd day of April, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE